UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF ARKANSAS
CENTRAL DIVISION

**FILED**
U.S. DISTRICT COURT
EASTERN DISTRICT ARKANSAS

SEP 3 0 2025

TAMMY H. DOWNS, CLERK
By:_____
_____ DEP CLERK

BRENDON JOHNSON,

    Plaintiff,

v.

JOHVONI MCCLENDON, individually
and officially, and CITY OF LITTLE
ROCK, a municipality,

    Defendants.

Case No.: 4:25-cv-1019-DPM

This case assigned to District Judge __Marshall__
and to Magistrate Judge __Kearney__

## COMPLAINT

Plaintiff, BRENDON JOHNSON ("MR. JOHNSON"), by and through his attorneys, ROMANUCCI & BLANDIN, LLC, complains of JOHVONI MCCLENDON ("DEFENDANT MCCLENDON") and CITY OF LITTLE ROCK ("CITY") and alleges in support as follows.

## INTRODUCTION

1.    Former Little Rock Police Officer JOHVONI MCCLENDON unlawfully shot and permanently wounded MR. JOHNSON. DEFNEDANT MCCLENDON shot MR. JOHNSON as he attempted to drive away from a police stop. MR. JOHNSON'S path was clear, he did not attempt to strike anyone with the vehicle, and he presented no immediate danger to DEFENDANT MCCLENDON or others. Despite the lack of justification, DEFENDANT MCCLENDON fired his weapon at the vehicle, striking MR. JOHNSON in the head. As a result of this unreasonable use deadly force, MR.

1

JOHNSON is blind, and he suffers from permanent brain damage.

2.     Residents of Little Rock have seen this story play out many times before. The Little Rock Police Department ("LRPD") has a history of its officers shooting at motorists who posed no immediate threat to officers or others. Despite being aware of this history, the CITY and LRPD failed to train, supervise, and hold officers accountable, resulting in a pattern of LRPD officers unlawfully employing excessive force, which has now caused MR. JOHNSON serious injuries.

3.     LRPD's history of excessive force is not limited, however, to unjustifiable shootings of drivers who pose no threat to officers of the public.  Little Rock police officers have a pattern and practice of engaging in excessive use of deadly force more broadly.  Time and time again, LRPD members have unjustifiably used deadly force against members of the public.  The CITY—made aware of the Police Department's pattern of excessive force via public reporting, its own internal data gathering, and civil rights lawsuits, among other sources—nonetheless failed adequately to train or supervise officers, or to hold them accountable.  The pattern and practice of LRPD engaging in the excessive and unjustifiable use of deadly force—and the attendant culture of impunity in LRPD—has now resulted in Mr. Johnson suffering serious lifelong injuries and impairments.

4.     The actions of DEFENDANT MCCLENDON and the CITY have permanently altered the life of MR. JOHNSON and inflicted suffering on him, his family, and the community of Little Rock. This action seeks accountability, justice,

and recognition for the inexcusable, unlawful, and unconstitutional wrong committed by the DEFENDANTS against MR. JOHNSON.

## JURISDICTION AND VENUE

5.    This civil action is brought for redress of alleged deprivations of constitutional rights protected by 42 U.S.C. § 1983, the Fourth and Fourteenth Amendments of the United States Constitution, and the Constitution and laws of the State of Arkansas.

6.    This Court has jurisdiction over this action under 28 U.S.C. § 1331. The Court has supplemental jurisdiction over Plaintiff's state law claims under 28 U.S.C. § 1367.

7.    This Court has personal jurisdiction over the parties and venue is proper under 28 U.S.C. § 1391(b) in this district. On information and belief, all or most of the parties reside in this judicial district. Additionally, the incident that gives rise to this action occurred in this district.

## PARTIES

8.    Plaintiff BRENDON JOHNSON ("MR. JOHNSON") brings this action on his own behalf. At all relevant times, MR. JOHNSON was an individual residing in the State of Arkansas and a citizen of the United States of America and was, therefore, entitled to all legal and constitutional rights afforded citizens of the United States of America.  At the time of filing, MR. JOHNSON is 22 years old.

9.    Upon information and belief, Defendant JOHVONI MCCLENDON ("DEFENDANT MCCLENDON") was a police officer employed by the Little Rock

Police Department ("LRPD") acting under color of state law at all times material to this Complaint.

10.   Upon information and belief, CITY OF LITTLE ROCK ("CITY") is municipal corporation organized and existing under the laws of the State of Arkansas. At all relevant times, the CITY was located in the County of Pulaski, State of Arkansas, and was the employer of the individually named Defendant. DEFENDANT MCCLENDON acted as an agent of the CITY during the incidents at issue. At all relevant times, the LRPD was a subdivision within the municipality which is the CITY.

11.   At all relevant times, the CITY is and was empowered, funded and directed to pay any § 1983 civil rights judgment for compensatory damages, actual damages and attorney fees for which any CITY employee acting within the scope of his or her employment is found liable. Accordingly, the CITY is an indemnification party regarding the acts and/or omissions of which PLAINTIFF complains.

## FACTUAL ALLEGATIONS

### The Shooting

12.   In the early morning of September 30, 2023, LRPD police officers, including DEFENDANT MCCLENDON, attempted to stop a stolen Dodge Challenger.

13.   After engaging in pursuit of the Dodge Challenger, LRPD officers lost sight of the stolen vehicle.

14.   Shortly thereafter, LRPD police officers found the stolen Dodge

Challenger abandoned near 8401 Mabelvale Pike, Little Rock, Arkansas.

15.    While searching the stolen Dodge Challenger, DEFENDANT MCCLENDON and the other LRPD police officers saw a truck drive near the location of the abandoned stolen vehicle, and they stopped it.

16.    In the truck were MR. JOHNSON and three friends. MR. JOHNSON was seated in the truck's back seat. At the time of the incident, MR. JOHNSON was 20 years old.

17.    DEFENDANT MCCLENDON and other LRPD police officers approached the truck that MR. JOHNSON and friends occupied.

18.    DEFENDANT MCCLENDON approached the driver's side of the truck screaming "GET OUT THE CAR," with his gun drawn and pointed at the truck. Other LRPD police officers also drew their firearms.

19.    The driver of the truck and at least one other person exited the vehicle, but MR. JOHNSON did not.

20.    MR. JOHNSON slid into the driver's seat and tried to drive away. MR. JOHNSON accelerated forward in his attempt to flee.

21.    Though MR. JOHNSON attempted to flee in the truck, he did not attempt to strike anyone.

22.    Nobody was on the path of the truck driven by MR. JOHNSON.

23.    No police or other vehicles were on the path of the truck driven by MR. JOHNSON.

24.    The street in front of the truck was clear of vehicles or persons as MR.

JOHNSON drove away from the officers.

25.    No individual was in contact with the truck driven by MR. JOHNSON.

26.    MR. JOHNSON did not brandish or point any weapon at anyone as he attempted to flee.

27.    At no point during MR. JOHNSON'S attempt to flee did he risk harming any officer, witness, or bystander.

28.    DEFENDANT MCCLENDON did not have reason to believe that his life or anyone else's life was in danger.

29.    At no point did DEFENDANT MCCLENDON see any threatening gestures or weapons.

30.    At no point did DEFENDANT MCCLENDON have reason to believe MR. JOHNSON was reaching for a gun or any other kind of weapon.

31.    At no point did DEFENDANT MCCLENDON have reason to believe that he or anyone else was in danger of great bodily harm for any reason, including being struck by the truck.

32.    No reasonable person could have perceived MR. JOHNSON'S actions as threatening DEFENDANT MCCLENDON or others.

33.    Nevertheless, DEFENDANT MCCLENDON pointed his gun at MR. JOHNSON.

34.    DEFENDANT MCCLENDON then fired at MR. JOHNSON.

35.    DEFENDANT MCCLENDON gave no warning that he would shoot before firing at MR. JOHNSON.

36.     DEFENDANT MCCLENDON fired his gun at least three times.

37.     DEFENDANT MCCLENDON fired his gun at the driver's side of the vehicle as the truck drove past him.

38.     At least one of DEFENDANT MCCLENDON's bullets struck MR. JOHNSON.

39.     The bullet fired by DEFENDANT MCCLENDON struck MR. JOHNSON in his head.

40.     After MR. JOHNSON was struck in the head by DEFENDANT MCCLENDON'S bullet, the truck briefly stopped before continuing to slowly roll forward.  The truck moved straight off the road and did not come into contact with any person or vehicle.  The truck eventually stopped when it collided with a set of trees.

41.     As a result of being struck in the head by the bullet, MR. JOHNSON is now permanently blind.

42.     As a result of being struck in the head by the bullet, MR. JOHNSON suffers from brain damage.

43.     As a result of being struck in the head by the bullet, MR. JOHNSON has permanently lost his sense of smell.

44.     As a result being struck in the head by the bullet, MR. JOHNSON suffers from seizures that occur repeatedly.

45.     As a result being struck in the head by the bullet, MR. JOHNSON is disfigured.

46.    The bullet that struck MR. JOHNSON remains lodged in his head.

<u>**The Aftermath**</u>

47.    Following the shooting, the LRPD launched an internal administrative investigation into the incident, resulting in DEFENDANT MCCLENDON's termination.

48.    The Sixth Judicial District Prosecuting Attorney conducted a criminal investigation into DEFENDANT MCCLENDON's conduct. That investigation resulted in the State charging DEFENDANT MCCLENDON with first-degree battery and first-degree assault. DEFENDANT MCCLENDON's criminal case is set for trial on November 11, 2025.

<u>**LRPD's Policies, Practices, and Custom of Unjustified Use of Lethal Force**</u>

49.    MR. JOHNSON's shooting was not an isolated incident. Police Officers of the LRPD have a documented history of using excessive, life-threatening force during police stops as suspects, who presented no serious threat of harm to the involved LRPD police officers or anyone else, attempt to flee.  In addition, across a variety of contexts, LRPD has a pattern and practice of using lethal force without reasonable justification.

50.    Under LRPD policy, officers are prohibited from voluntarily placing themselves in front of an oncoming vehicle where deadly force is the probable outcome.

51.    Under LRPD policy, when confronted by an oncoming vehicle, officers are to move out of its path rather than fire at the vehicle.

52.     Under LRPD policy, officers are prohibited from discharging firearms at a moving or fleeing vehicles, unless it is necessary to prevent imminent death or serious physical injury to the officer or another person.

53.     Under LRPD policy, the use of deadly force is not allowed to protect property interests and will only be used to preserve life or to prevent serious physical injury.

54.     Under LRPD policy, deadly force is an act of last resort and will only be used when other reasonable alternatives are impractical or have failed.

55.     Despite these policies, LRPD has continued to use deadly force on fleeing suspects who pose no risk to officers or others.

56.     This custom is evidenced by a pattern of similar incidents in which officers have unlawfully discharged their firearms against individuals without sufficient justification. The following are representative examples of unlawful and unjustified uses of lethal force by LRPD officers:

57.     In June 2010, LRPD police officer Aruther McDaniel shot and killed Millis Eldon Farnam and struck another person after they attempted to flee a traffic stop. As Farnam fled, he drove around Officer McDaniel. Officer McDaniel fired his firearm at the fleeing vehicle, discharging most of his shots after the vehicle had already passed him. As a result, Officer McDaniel killed Millis Eldon Farnam. As one passenger attempted to flee on foot, Officer McDaniel continued to shoot at the passenger, despite the vehicle being 50 yards away. Officer McDaniel also struck the passenger.

58. In December 2011, LRPD police officer Christopher Johannes shot at a vehicle driven by Joseph Williams. Officer Johannes tried to stop a vehicle as it pulled out of a parking spot in order to investigate a crime. As the vehicle backed up, Officer Johannes shot at the vehicle twelve times. Williams, along with another passenger, were struck.

59. On August 12, 2012, LRPD police officer Josh Hastings shot and killed a fifteen-year-old boy, Bobby Moore, after attempting to stop the teen from fleeing the scene of a crime. Hastings fired three times at the vehicle, which was either stopped or backing up, according to forensic evidence. Hastings was not in danger of being struck by the vehicle. Hastings was fired from LRPD and criminally charged with manslaughter. During investigations into the shooting and Hastings' record with the LRPD, it was revealed that Hastings had been flagged nineteen times by the LRPD's Early Intervention System ("EIS"), had twenty-one reported use of force incidents, and was determined to have lied to investigators about the shooting of Bobby Moore.

60. On July 19, 2017, LRPD officer Ralph Breshears shot at and struck Rudy Avila multiple times as Avila fled from police officers in a vehicle. Officer Breshears was not in danger of being run over when he shot Avila. Several of the bullets entered through the side of vehicle. Officer Brashears had at least twelve citizen complaints of excessive force against him prior to this shooting.

61. On October 17, 2017, LRPD police officer Brittany Gunn shot and killed James Hartfield after he attempted to flee a vehicle stop. Officer Gunn entered the passenger side of Hartfield's vehicle and shot Hartfield as he attempted to drive

away. The LRPD's criminal investigation into the incident cleared Officer Gunn of any wrongdoing.

62.    On February 22, 2019, LRPD police officer Charles Starks shot and killed Bradley Blackshire. Officer Starks approached Blackshire's vehicle as it was parked, with his weapon drawn, ordering Blackshire out of the vehicle. As Blackshire's vehicle began to slowly roll forward, Officer Starks, who never observed Blackshire to be wielding a weapon, leaned into the vehicle's window and repeatedly fired at Mr. Blackshire. Once the vehicle stopped moving, Starks moved directly in front of the vehicle and continued to fire his weapon, eventually getting on the hood as Mr. Blackshire was unable to keep his foot on the break due to being severely wounded by the multiple gunshots. Starks was fired for violating LRPD policy, and claimed in defense that he had never been trained by the LRPD on how to address a situation like his encounter with Mr. Blackshire.

63.    On May 8, 2021, LRPD police officer Coleman Dillon shot and struck Michael Smith after approaching Smith as he sat in a parked car outside of a home. As Smith turned on the car and started moving in an attempt to flee, Officer Dillon went around the front of the vehicle and pointed his weapon through the passenger door, firing at least one shot, which struck Smith.

64.    On March 30, 2022, an LRPD police officer shot twice at James Ballew who fled police on foot after being stopped in his vehicle. The LRPD police officer claimed that he saw Ballew point a gun at him, but no gun was recovered on his person during Ballew's arrest.

11

65.    On January 26, 2023, two LRPD officers shot and killed Elbert R. Miller after responding to an assist medical call reporting that Miller was suicidal. Upon seeing Miller come out of his bedroom with a gun pointed at his own head, officers fatally shot Miller.

66.    Despite LRPD policy formally prohibiting officers from shooting into moving vehicles and using lethal force without sufficient justification, LRPD rarely, if ever, punishes officers for violating these policies.

67.    The CITY has been placed on notice of these ongoing violations through lawsuits, civilian complaints, media investigations, and community protests, but have failed to take meaningful corrective action.

68.    Notwithstanding the sordid history of LRPD officers shooting at fleeing suspects who pose no threat to officers or others, LRPD has knowingly failed to train its officers on what level and type of force, if any, is appropriate for use during a traffic stop or investigation involving a vehicle.

## <u>COUNT I: 42 USC § 1983</u>
### (Defendant McClendon: Fourth Amendment - Excessive Force)

69.    Plaintiff incorporates and realleges each of the paragraphs in this complaint by reference.

70.    DEFENDANT MCCLENDON engaged in excessive and unnecessary force when shooting Plaintiff. In doing so, DEFENDANT MCCLENDON violated Plaintiff's right to be free from excessive force.

71.    DEFENDANT MCCLENDON was, at all times relevant, employed as a police

officer with the Little Rock Police Department, a department of the CITY, and was acting under the color of law.

72.   DEFENDANT MCCLENDON used excessive force and shot MR. JOHNSON without legal justification. DEFENDANT MCCLENDON'S use of force was excessive and unreasonable. MR. JOHNSON never made any threatening gestures toward DEFENDANT MCCLENDON or others, and did not pose an immediate threat to the safety of DEFENDANT MCCLENDON or others. Instead, MR. JOHNSON attempted to flee in the vehicle on a path where no one stood or could be struck.

73.   DEFENDANT MCCLENDON was not provoked when he fired into the vehicle MR. JOHNSON occupied. DEFENDANT MCCLENDON had no lawful or justified reason for doing so. As a result of DEFENDANT MCCLENDON'S acts, MR. JOHNSON sustained great bodily harm and continues to suffer from permanent injuries. The excessive and deadly force used by DEFENDANT MCCLENDON was not reasonable or justified, nor was it necessary under the circumstances.

74.   DEFENDANT MCCLENDON'S actions were not objectively reasonable or necessary. DEFENDANT'S choice to discharge his firearm at MR. JOHNSON was unreasonable under the circumstances. MR. JOHNSON did not pose an immediate threat of serious harm to the DEFENDANT or any other person. MR. JOHNSON drove forward, as he intended, and did not strike anyone or risk striking anyone with the vehicle.

13

75.   DEFENDANT MCCLENDON embarked on an intentional, willful, malicious, and outrageous course of conduct that was intended to cause and, in fact, caused MR. JOHNSON to suffer extreme and severe mental and emotional distress, agony and anxiety, and extreme physical pain.

76.   As a direct and proximate result of Defendant's unlawful conduct, Plaintiff suffered serious injury, along with conscious pain, suffering, emotional distress, and other damages.

### COUNT II: 42 USC §1983
(Defendant McClendon: Fourth Amendment - Unlawful Seizure)

77.   Plaintiff incorporates and re-alleges each of the paragraphs in this complaint by reference.

78.   DEFENDANT MCCLENDON was, at all times relevant, employed as a police officer with the Little Rock Police Department, a department of the CITY, and was acting under the color of law.

79.   DEFENDANT MCCLENDON used deadly force when he intentionally discharged his firearm at MR. JOHNSON three times.

80.   DEFENDANT MCCLENDON's firearm discharge struck MR. JOHNSON in the head causing him to stop his movement.

81.   At the time of the shooting, Plaintiff posed no serious, immediate threat to DEFEDANT MCCLENDON or others, and was not engaged in any conduct that would justify such an act.

82.   DEFEDNAT MCCLENDON lacked probable cause to seize MR. JOHNSON by

using deadly force.

83. The shooting constituted a seizure under the Fourth Amendment, and that seizure was objectively unreasonable.

84. As a direct and proximate result of Defendant's unlawful conduct, Plaintiff suffered serious injury, along with conscious pain, suffering, emotional distress, and other damages.

### COUNT III: 42 USC §1983
(Defendant City of Little Rock: *Monell* liability—Policy, Practice, and/or Custom)

85. Plaintiff incorporates and re-alleges each of the paragraphs in this complaint by reference.

86. DEFENDANT MCCLENDON was, at all times relevant, employed as a police officer with the Little Rock Police Department, a department of the CITY, and was acting under the color of law.

87. The City of Little Rock bears responsibility for DEFENDANT MCCLENDON's violation of MR. JOHNSON's constitutional rights. This is so for at least three reasons: **First**, the CITY has an informal custom of LRPD officers excessively deploying lethal force, against fleeing drivers and other fleeing individuals who pose no immediate threat to any officer or other person, and more broadly across contexts. **Second**, the CITY was deliberately indifferent to MR. JOHNSON's constitutional rights when it failed to adequately supervise its officers by declining to meaningfully discipline officers who used excessive force on members of the public. The resulting culture of impunity at LRPD

resulted in DEFENDANT MCCLENDON permanently blinding MR. JOHNSON. **Third**, the CITY has failed to adequately train officers with respect to the use of force on individuals in fleeing vehicles, and on the use of force on fleeing individuals more generally.

88.     As discussed in paragraphs 52 to 61 above, which present a non-exhaustive list of examples, LRPD has a continuing, widespread, and persistent pattern of using lethal force without justification against members of the public.

89.     Many of the cited examples of excessive force by LRPD officers resemble the precise circumstances confronted by MR. JOHNSON: LRPD officers have repeatedly fired into moving vehicles that posed no threat to any officer or other person.

90.     The CITY has remained deliberately indifferent to the persistent pattern of excessive force deployed by officers. Public reporting has indicated LRPD officers are rarely disciplined for even severe misconduct. One 2018 analysis of LRPD records found that there appears to be little supervision at any level within LRPD, and even when officers are disciplined, they are often able to undo the discipline via appeals processes. The analysis found that since 2000, Little Rock police officers shot and/or killed at least 90 people, but, improbably, in only two instances did LRPD determine that an officer used excessive force. The message to officers is evident: the use of lethal force is virtually assured to go unpunished.

91.     Public reporting on LRPD's early intervention system (EIS) also sheds light on

the CITY's deliberate indifference to its pattern of excessive force. The EIS was designed to flag potential problem officers by identifying those officers who have engaged in behavior that are predictors of the use of excessive force. The 2018 analysis determined that the EIS issued alerts on potential problem officers more than 700 times between July 200 and the end of 2015, but just two of those resulted in an intervention for the officer. And both of those interventions were for abuse of the department's sick leave policy.

92. After the 2019 incident in which LRPD Officer Starks killed Bradley Blackshire by unjustifiably shooting into Mr. Blackshire's vehicle, LRPD commissioned an independent assessment of a number of LRPD's functions. The resulting October 2021 analysis from CNA's Center for Justice Research ("CNA Report") found significant deficiencies in LRPD's accountability systems. Among CNA's findings were:

   a. LRPD's policies governing disciplinary outcomes did not provide adequate definitions of key terms and concepts—including no definition of what it meant for evidence to be "sufficient" to sustain a violation; no standards for recommending discipline; and no standards for when criminal allegations against officers are "disproved." The report noted that "lacking these standards, LRPD creates an environment where mistrust can flourish if officers feel there is little consistency in outcomes." The report further noted that in the absence of standardized definitions, "community members' complaints may be dismissed unfairly based on the investigator's

17

personal interpretation of the term."

b.  LRPD did not effectively use its administrative investigation data system. LRPD did not capture data that would enable to evaluate its ability to conduct expeditious investigations, even though "[c]onducting investigations expeditiously is important for both community members and officers to avoid delaying justice unduly."  Some investigations took more than three years to complete.

c.  At various stages in the internal investigative process, the Chief of Police was vested with undue discretion to affect outcomes.  There was, perhaps unsurprisingly, a department-wide perception that cronyism and favoritism are inherent in the police accountability system—specifically a perception that "it matters who you are" when it comes to accountability.

d.  LRPD's response to resistance and active aggression policy provided an accountability "escape clause" that provided, in part: "Some officers will be better at de-escalating a situation than others. Failure of an officer to successfully de-escalate an incident after attempting should not reflect poorly on the officer."  The report noted: "Based on this section, [an] officer could claim that he or she attempted to de-escalate and therefore not be subject to any disciplinary efforts, even if such efforts were inconsistent with de-escalation training received."

e.  In accordance with the 2018 analysis on the early intervention system, the CNA report found that the thresholds to trigger an EIS alert were not

sufficient to identify officers at risk of an adverse event. The EIS thresholds were "extremely high and unlikely to identify at-risk members sufficiently." Among other deficiencies, many of the thresholds require allegations to be sustained, "thereby ignoring concerns as to why an officer has an elevated number of complaints compared with others." For instance, the EIS system did not appear to adequately capture two members who were the subject of 17 different complaints and 27 members who were the subject of 10 or more different complaints. Put differently: the CITY has been made aware of problematic officers at great risk of using excessive force, but set the threshold for action so high that it resulted in the CITY ignoring its own data.

93.    The CITY's failure to meaningfully hold officers accountable in the face of a widespread pattern of excessive force amounts to deliberate indifference to the Constitutional rights of members of the public. It further amounts to a failure to supervise its officers, who, in unjustifiably using lethal force, have repeatedly misused the enormous power with which they are vested.

94.    Finally, the CITY has knowingly failed to train its officers adequately on how to determine: 1) whether to use force during a traffic stop or an investigation involving a motorist; and 2) if necessary, the type and amount of force to use during a traffic stop or an investigation involving a motorist.

95.    As a matter of policy, practice, and custom, the CITY has knowingly failed to adequately train its officers on how to determine: 1) whether to use force when

19

a suspect flees from its officers; and 2) if necessary, the type and amount of force to use during the pursuit of a suspect.

96.  The CITY failed to provide adequate training to its officers notwithstanding the CITY's pattern of excessive force generally and with respect to the use of lethal force on fleeing subjects and subjects fleeing in vehicles, discussed above.

97.  The CITY's deliberate indifference to a sustained pattern and practice of excessive use of lethal force, and its failure to adequately supervise and train LRPD officers, is the moving force behind the immense injuries suffered by MR. JOHNSON.  DEFENDANT MCCLENDON's actions are precisely what one would expect from a department where the unjustified use of lethal force is tolerated. By failing to adequately investigate, punish, and discipline prior instances of similar conduct, and failing to meaningfully train officers in the appropriate use of force with respect to fleeing members of the public, the CITY encourages future uses of excessive deadly force as officers are led to believe their actions will not be meaningfully scrutinized or subject to discipline.

98.  As a result of these inappropriate policies, practices, and customs, the CITY encourages police officers, like the DEFENDANT MCCLENDON, to wantonly escalate uses of force, injuring and killing people like MR. JOHNSON in the process.

99.  The shooting and resulting unlawful seizure of MR. JOHNSON by DEFENDANT MCCLENDON was a direct and proximate result of the CITY'S unconstitutional custom or practice.

20

100.  As a result, MR. JOHNSON suffered injuries including a total loss of vision, as well as pain, suffering, and emotional distress, and other damages.

## COUNT IV: VIOLATION OF ARKANSAS CIVIL RIGHTS ACT, ARKANSAS CODE § 16-123-105
### (Defendant McClendon: Excessive Force)

101.  Plaintiff incorporates and realleges each of the paragraphs in this complaint by reference.

102.  DEFENDANT MCCLENDON engaged in excessive and unnecessary force when shooting Plaintiff. In doing so, DEFENDANT MCCLENDON violated Plaintiff's right under the Arkansas Constitution, Art. II, Sec. 15, to be free from excessive force.

103.  DEFENDANT MCCLENDON was, at all times relevant, employed as a police officer with the Little Rock Police Department, a department of the CITY, and was acting under the color of law.

104.  DEFENDANT MCCLENDON, used excessive force as described above and shot MR. JOHNSON without legal justification. DEFENDANT MCCLENDON'S use of force was excessive and unreasonable.MR. JOHNSON never made any threatening gestures toward DEFENDANT MCCLENDON or others, and did not pose an immediate threat to the safety of DEFENDANT MCCLENDON or others. As described above, MR. JOHNSON attempted to flee in the vehicle on a path where no one stood or could be struck.

105.  DEFENDANT MCCLENDON was not provoked when he fired into the vehicle MR. JOHNSON occupied. DEFENDANT MCCLENDON had no lawful or

justified reason for doing so. As a result of DEFENDANT MCCLENDON'S acts, MR. JOHNSON sustained great bodily harm and continues to suffer from permanent injuries. The excessive and deadly force used by DEFENDANT MCCLENDON was not reasonable or justified, nor was it necessary under the circumstances.

106. DEFENDANT MCCLENDON'S actions were not objectively reasonable or necessary. DEFENDANT'S choice to discharge his firearm at MR. JOHNSON was unreasonable under the circumstances. MR. JOHNSON did not pose an immediate threat of serious harm to the DEFENDANT or any other person. MR. JOHNSON drove forward, as he intended, and did not strike anyone or risk striking anyone with the vehicle.

107. DEFENDANT MCCLENDON embarked on an intentional, willful, malicious, and outrageous course of conduct that was intended to cause and, in fact, caused MR. JOHNSON to suffer extreme and severe mental and emotional distress, agony and anxiety, and extreme physical pain.

108. As a direct and proximate result of Defendant's unlawful conduct, Plaintiff suffered serious injury, along with conscious pain, suffering, emotional distress, and other damages.

## COUNT V: VIOLATION OF ARKANSAS CIVIL RIGHTS ACT, ARKANSAS CODE § 16-123-105
(Defendant McClendon: Unlawful Seizure)

109. Plaintiff incorporates and re-alleges each of the paragraphs in this complaint by reference.

110.   DEFENDANT MCCLENDON was, at all times relevant, employed as a police officer with the Little Rock Police Department, a department of the CITY, and was acting under the color of law.

111.   DEFENDANT MCCLENDON used deadly force when he intentionally discharged his firearm at MR. JOHNSON three times.

112.   DEFENDANT MCCLENDON's firearm discharge struck MR. JOHNSON in the head causing him to stop his movement.

113.   At the time of the shooting, Plaintiff posed no serious, immediate threat to DEFEDANT MCCLENDON or others, and was not engaged in any conduct that would justify such an act.

114.   DEFEDNAT MCCLENDON lacked probable cause to seize MR. JOHNSON by using deadly force.

115.   The shooting constituted a seizure under the Arkansas Constitution, Art. II, Sec. 15, and that seizure was objectively unreasonable.

116.   As a direct and proximate result of Defendant's unlawful conduct, Plaintiff suffered serious injury, along with conscious pain, suffering, emotional distress, and other damages.

### COUNT VI: VIOLATION OF ARKANSAS CIVIL RIGHTS ACT, ARKANSAS CODE § 16-123-105
(Defendant City of Little Rock: Policy, Practice, and/or Custom Liability)

117.   Plaintiff incorporates and re-alleges each of the paragraphs in this complaint by reference.

118.   As discussed at length above, the CITY's patterns and practices were the

driving force behind MR. JOHNSON's injuries, in at least the following ways: (1) The CITY has an informal custom of LRPD officers excessively deploying lethal force, against fleeing drivers and other fleeing individuals who pose no immediate threat to any officer or other person, and more broadly across contexts. (2) The CITY was deliberately indifferent to MR. JOHNSON's constitutional rights when it failed to adequately supervise its officers by declining to meaningfully discipline officers who used excessive force on members of the public. The resulting culture of impunity at LRPD resulted in DEFENDANT MCCLENDON permanently blinding MR. JOHNSON. **(3)** The CITY has failed to adequately train officers with respect to the use of force on individuals in fleeing vehicles, and on the use of force on fleeing individuals more generally.

119. The CITY's deliberate indifference to a sustained pattern and practice of excessive use of lethal force, and its failure to adequately supervise and train LRPD officers, is the moving force behind the immense injuries suffered by MR. JOHNSON. DEFENDANT MCCLENDON's actions are precisely what one would expect from a department where the unjustified use of lethal force is tolerated. By failing to adequately investigate, punish, and discipline prior instances of similar conduct, and failing to meaningfully train officers in the appropriate use of force with respect to fleeing members of the public, the CITY encourages future uses of excessive deadly force as officers are led to believe their actions will not be meaningfully scrutinized or subject to discipline.

24

120.    As a result of these inappropriate policies, practices, and customs, the CITY encourages police officers, like the DEFENDANT MCCLENDON, to wantonly escalate uses of force, injuring and killing people like MR. JOHNSON in the process.

121.    The shooting and resulting unlawful seizure of MR. JOHNSON by DEFENDANT MCCLENDON was a direct and proximate result of the CITY'S unconstitutional custom or practice.

122.    As a result, MR. JOHNSON suffered injuries including a loss of vision, as well as pain, suffering, and emotional distress, and other damages.

## COUNT VII: ASSAULT AND BATTERY
(All Defendants)

123.    Plaintiff incorporates and re-alleges each of the paragraphs in this complaint by reference.

124.    DEFENDANT MCCLENDON was, at all times relevant, employed as a police officer with the Little Rock Police Department, a department of the CITY, and was acting under the color of law.

125.    DEFENDANT MCCLENDON drew his gun and fired his gun at MR. JOHNSON, thereby intentionally causing MR. JOHNSON to feel imminent apprehension of harmful and offensive contact.

126.    DEFENDANT MCCLENDON's use of lethal force on MR. JOHNSON was intended to cause harmful and offensive contact and the imminent apprehension thereof.

25

127.  As a result, MR. JOHNSON suffered injuries including a loss of vision, as well as pain, suffering, and emotional distress, and other damages.

## COUNT VIII: INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS
### (All Defendants)

128.  Plaintiff incorporates and re-alleges each of the paragraphs in this complaint by reference.

129.  DEFENDANT MCCLENDON was, at all times relevant, employed as a police officer with the Little Rock Police Department, a department of the CITY, and was acting under the color of law.

130.  DEFENDANT MCCLENDON intended to cause MR. JOHNSON emotional and physical distress by engaging in the violent and unjustified conduct described herein.

131.  DEFENDANT MCCLENDON's conduct was intentional, extreme, and outrageous and caused MR. JOHNSON to experience severe emotional distress that continues to this day.

WHEREFORE, Plaintiff respectfully requests that the Court enter judgment in his favor against defendants CITY OF LITTLE ROCK and JOHVONI MCCLENDON and award compensatory damages, punitive damages (against DEFENDANT MCCLENDON), and attorneys' fees. Plaintiff also requests equitable and injunctive relief against the CITY OF LITTLE ROCK, and any other relief the Court deems just and appropriate with respect to all defendants.

## JURY DEMAND

Plaintiff hereby demands a trial by jury pursuant to Federal Rule of Civil

Procedure 38(b) on all issues so triable.

Respectfully submitted,

*/s/ Benjamin Berkman*
Attorney for Plaintiff

**ROMANUCCI & BLANDIN, LLC**
Stephen Weil (IL Bar #6291026) (*pro hac vice* forthcoming)
Benjamin Berkman (IL Bar # 6329445)
(*pro hac vice* forthcoming)
321 N. Clark St., Suite 900
Chicago, IL 60654
Tel.: 312.253.1000
Fax: 312.458.1004
sweil@rblaw.net
bberkman@rblaw.net